UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>David John Martin,<br><br>    Defendant. | Criminal No. 12-206(3) (DWF/LIB)<br><br>**REPORT AND RECOMMENDATION** |

This matter came before the undersigned United States Magistrate Judge upon Defendant's motion to suppress evidence obtained as a result of his arrest and subsequent search of his person. The case has been referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a hearing on November 16, 2012 regarding the suppression motion and both parties' discovery motions in this case.[1] The parties each made their arguments on the record, and upon Defendant's request, the Court permitted each party to submit additional written argument. For the reasons outlined below, the Court recommends that Defendant's motion to suppress be denied.

**I.     BACKGROUND**

On January 2, 2011, at approximately 1:34 p.m., Red Lake Department of Public Safety Sergeant Harlan Johnson received a call, triggered by Greg Good's request to speak with a law enforcement officer, to respond to Don Cook's residence located in the Red Lake Indian Reservation. When Sergeant Johnson arrived at Mr. Cook's residence, Mr. Good advised Sergeant Johnson that Defendant had been in Mr. Good's residence shortly before he called the police and that during that time Defendant: 1) had made statements that worried Mr. Good,

---

[1] The discovery motions were the subject of separate orders.

1

specifically, in response to Mr. Good's question of "what he had done," Defendant stated "I'm probably going to prison for the rest of my life"; 2) had been opening and closing a folding knife; 3) had placed a rock of crack cocaine on the table next to Mr. Good; and 4) had followed Mr. Good into his living room at one point.  However, Mr. Good never stated that he had been assaulted by Defendant, nor did he state that Defendant had damaged any property inside the house.  Mr. Good provided that he left his residence to call police because he was fearful of Defendant.  Based on Mr. Good's report of the events, Sergeant Johnson decided that he would arrest Defendant for causing a disturbance to the peace of the community, as a public nuisance pursuant to Red Lake Tribal Code Section 507.04(a), which Sergeant Johnson testified was an arrestable offense.  Although he could not be sure that Defendant was still present at Mr. Good's residence, based on the information and request from Mr. Good to remove Defendant from the residence, and consent from Mr. Good to enter the residence, Sergeant Johnson traveled to Mr. Good's residence to investigate if Defendant was still there.  Because he was concerned for his safety, in light of the report that a knife was present, Sergeant Johnson requested the assistance of three other officers prior to heading to Mr. Good's residence.  He also advised the other three officers that Defendant should be arrested for violating the public nuisance statute.

When the officers arrived at Mr. Good's residence, they approached on foot towards the house with their weapons drawn.  One of the officers knocked on the glass patio door on the east side of the residence and announced he was police officer, to which the officers heard no response.  Shortly thereafter, when one of the officers saw movement in the house, he advised the person inside the house to come out.  At that time, a male, later identified as Defendant, exited the house and was handcuffed by one of the officers.  While two of the officers entered the residence to secure it and make sure no one else was present inside, another officer escorted

Defendant to the squad car.  Sergeant Johnson then made his way to the squad car to talk with Defendant.  Although Sergeant Johnson did not have any direct, personal contact with Defendant prior to this time, he was able to observe Defendant during the entire incident and saw Defendant being handcuffed.  Sergeant Johnson did not inform Defendant why he was being arrested.  He described Defendant as cooperative, quiet, and appearing tired.  It appeared to Sergeant Johnson that Defendant looked "strung out," as if he had been drinking and had then quit.

When Sergeant Johnson came to the Defendant, Defendant had been placed in the back seat of the squad car.  On the trunk of the squad car, Sergeant Johnson observed a knife and a "rock" of white substance, which the officer advised was crack.  The officer also advised that the knife and white substance were both found on David's person during a search incident to Defendant's arrest; Sergeant Johnson clarified that he was not present for the search of Defendant's person.  Because this was an arrest initiated by Sergeant Johnson, pursuant to standard police policy, Sergeant Johnson took possession of both the knife and the white substance, which he later tested and confirmed was as positive for crack cocaine.

After Defendant was taken into arrest and officers left Mr. Good's property, Sergeant Johnson again met with Mr. Good.  At that time, Sergeant Johnson asked Mr. Good if he was willing to sign a victim statement form regarding the information he had earlier provided to Sergeant Johnson.  Although Mr. Good provided that he was not able to physically complete the written statement form, he agreed to do so and asked that Sergeant Johnson transcribe the statements Mr. Good was willing to make.  Sergeant Johnson advised him that he generally would not do so but agreed in this instance because of Mr. Good's limitation.  As such, although Sergeant Johnson physically wrote the information provided by Mr. Good on the form, at the hearing, Sergeant Johnson explained that he wrote the exact words stated by Mr. Good.

Furthermore, he read the report back to Mr. Good and had him initial at the bottom that the statement as written was true and correct. At the hearing, Sergeant Johnson explained that the information provided in the victim statement form was the same information Mr. Good had provided earlier to him, with the exception that Mr. Good now also explained that when he had asked Defendant if Defendant had been involved with the house being burned down, Defendant had made a hand motion to "keep it down."

## II.    DISCUSSION

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few specifically established and well-delineated exceptions." United States v. Davis, 569 F.3d 813, 816 (8th Cir. 2009) (citing Katz v. United States, 389 U.S. 347, 357 (1967)). Nevertheless, "[i]t is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." United States v. Robinson, 414 U.S. 218, 224 (1973).

Defendant does not dispute this well-settled legal principle but, instead, argues that there was no basis to arrest Defendant. (See Def.'s Mem. in Supp. of Mots. [Docket No. 156] at 3) ("The question we present is whether there was reliable evidence to prove a crime had been committed by Mr. Martin." (emphasis in original)).

Equally well-establishes is that "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to

lead a reasonable person to believe that the defendant has committed or is committing an offense." United States v. Torres-Lona, 491 F.3d 750, 755 (8th Cir. 2007). "A 'probability or substantial chance of criminal activity, rather than an actual showing of criminal activity' is sufficient." Jones, 535 F.3d at 890 (quoting Torres-Lona, 491 F.3d at 755). In considering whether probable cause existed to arrest the defendant, the Court "examine[s] the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (internal quotation marks omitted).

The Government argues that probable cause existed to arrest Defendant on the charge of public nuisance because Mr. Good had left his own home out of fear of the Defendant. (Gov't Mem. of Law in Opp'n to Def.'s Mot. [Docket No. 162] at 5). In light of the information provided by Mr. Good to Sergeant Johnson—namely that Defendant, in Mr. Good's residence, had made statements implicating himself in a fire the previous night and had shown to Mr. Good a knife and crack cocaine—"Sergeant Johnson could objectively conclude that probable cause existed to believe that the [D]efendant caused a disturbance to the peace and comfort of [Mr. Good]." (Id. at 6).

Red Lake Tribal Code, Section 507.04(a), upon which Sergeant Johnson based his arrest of Defendant, provides that "[a]ny Indian who by his act or failure to perform an act does any of the following is guilty of maintaining a public nuisance, which is a misdemeanor: a) causes a disturbance to the health, safety or peace and comfort of any number (including one) of members of the public." Here, there is no question that Defendant's conduct, as described by Mr. Good to Sergeant Johnson, demonstrated probable cause that Defendant had violated 507.04(a). While in Mr. Good's home, Defendant made statements implicating himself in a serious crime, exhibited

5

and revealed a knife, presented a rock of a substance that looked to Mr. Good like crack cocaine, and followed Mr. Good into the living room, all of which made Mr. Good so uncomfortable and fearful that he left his house and walked to a nearby residence in order to call the police to come and remove Defendant from his home.  The Court finds that under the circumstances described above, an "objectively reasonable police officer" could have concluded that probable cause existed to believe that Defendant had committed a public nuisance in violation of 507.04(a).

Aside from a conclusory statement that "[w]hat Mr. Martin said was far from [a disturbance]," (see Def.'s Mem. in Supp. of Mots. at 4), Defendant does not appear to challenge that the facts presented, if true, would demonstrate probable cause.  Instead, Defendant's primary argument is that Mr. Good's statements to Sergeant Johnson did not constitute "trustworthy information" because they had not been "corroborated by independent evidence."  (Def.'s Mem. in Supp. of Mots. at 3-4).[2]  The Government argues that "[n]o independent corroboration of a witness's statement is necessary to effectuate an arrest when the witness perceives the crime." (Gov't Mem. of Law in Opp'n to Def.'s Mot. at 6).

The cases upon which Defendant relies are all inapposite to the facts before the Court in this case, as they relate to information provided by an informant—not the actual victim of an alleged crime.  See United States v. Marchena-Borjas, 209 F.3d 698, 699-700 (8th Cir. 2000) ("officers' independent verification and corroboration of the **informant's** predictions of future activity" (emphasis added)); United States v. Hambrick, 630 F.3d 742, 747 (8th Cir. 2011) ("In this case, the **informant** was known to the officers as a reliable source of information . . . ." (emphasis added)); United States v. Sherrill, 27 F.3d 344, 347 (8th Cir. 1994) ("The police also substantially corroborated the **informant's** tip by independent investigation." (emphasis added)).

---

[2] The Court notes that Defendant does not challenge or dispute Sergeant Johnson's testimony that Section 507.04(a) is an arrestable offense.

6

Here, the information provided to Sergeant Johnson was directly stated to him by Mr. Good, the alleged victim of the crime and based on first-hand knowledge. The veracity of information provided by the victim of a recently committed crime need not be corroborated to the extent required of an unknown informant. See Kiser v. City of Huron, 219 F.3d 814, 815 (8th Cir. 2000) (affirming a district court's finding of probable cause when the police had arrested the defendant solely on the victim's allegations that the defendant had kidnapped her because her comments included sufficient detail to suggest that she spoke truthfully); Benigni v. Smith, 121 Fed. Appx. 164, 165 (8th Cir. 2005) ("Officers are entitled to rely on the veracity of information supplied by the victim of a crime."); Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."); Martin v. Viggiani, 1993 WL 404098, at *6 (S.D. N.Y. Oct. 5, 1993) ("[W]hen a putative victim precisely identifies the alleged perpetrator of a crime and there is independent corroborative evidence to support at least some of the victim's assertions, a person of reasonable caution is warranted in believing that an offense has been committed by the alleged perpetrator."); United States v. Herberg, 1965 WL 4654, at *222 (C.M.A. Feb. 26, 1965) ("It is recognized that complaints registered by actual victims of offenses, unlike the reports of unidentified informers, do not require the same corroboration or verification in order to serve as probable cause for an arrest.").

In this case, not only did there not appear to be any reason to doubt the truthfulness of the victim's statements,[3] who had left his own residence and walked to another residence just to call

---

[3] Defendant now provides that Mr. Good had previously been convicted of a federal crime. However, even if this would have been sufficient to question the veracity of Mr. Good's testimony had it been known by Sergeant

7

the police, but moreover, upon arrival at Mr. Good's residence, Sergeant Johnson and the remaining officers corroborated the most important of all facts provided by Mr. Good: Defendant was still in Mr. Good's residence.

Therefore, under the totality of the circumstances of this case, the Court finds that probable cause existed to arrest Defendant for violating Red Lake Tribal Code Section 507.04(a). See Benigni, 121 Fed. Appx. at 165-66 (finding that probable cause existed to arrest the defendant for disorderly conduct based on a 911 call from a witness who feared that the defendant would become abusive); Perkel v. City of Springfield, 10 Fed. Appx. 390, 391-92 (8th Cir. 2001) (finding that police had probable cause to arrest the defendant in a residence "based on the trespassing victim's report"); United States v. Donnell, No. 08-199 (JNE/RLE), 2008 WL 4277712, at *2-4 (D. Minn. Sept. 11, 2008) (finding that police had probable cause to arrest the defendant at a residence that did not belong to him—based on a report by the victim's mother that the defendant had sexually assaulted the victim and that he possessed a knife—because police had permission from the owner of the residence to enter the residence).

Because the Court finds that the search of Defendant's person was made pursuant to a lawful arrest, the Court also finds that any evidence found as a result of the search of his person need not be suppressed.

---

Johnson, which the Court does not believe alone would be sufficient, at the hearing, Sergeant Johnson testified that he was not aware of this fact. Defendant has cited to no other facts that would have made a reasonably prudent officer question the truthfulness of Mr. Good's statements. See Anderson v. Cass Cnty., 367 F.3d 741, 746 (8th Cir. 2004) (finding that the report of the victim was not untrustworthy and was sufficient for probable cause to arrest the defendant even though the arresting officers "were aware that [the victim] had a criminal history . . . .").

### III. CONCLUSION

1. Based on the foregoing, and all the files, records and proceedings herein,

    **IT IS HEREBY RECOMMENDED** that Defendant's motion to suppress

    evidence [Docket No. 95] be denied.


Dated: December 14, 2012                                s/Leo I. Brisbois
                                                        LEO I. BRISBOIS
                                                        United States Magistrate Judge


### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by December 28, 2012**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.