# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

        Respondent-Plaintiff,

v.

David John Martin,
a/k/a Lurch,

        Petitioner-Defendant.

Criminal No. 12-206(3) (DWF/LIB)
Civil No. 16-414 (DWF)

**MEMORANDUM
OPINION AND ORDER**

## INTRODUCTION

This matter is before the Court on Petitioner-Defendant David John Martin's ("Petitioner-Defendant") *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Doc. No. 448.) Petitioner-Defendant has also moved the Court for relief on supplemental claims he has made that was filed on July 25, 2016, to vacate, set-aside, or correct his sentence. (Doc. No. 474.) The Government opposes Petitioner-Defendant's motions. (Doc. No. 515.)

Petitioner-Defendant, in his initial § 2255 motion, alleged twelve separate claims, with multiple grounds stated in some of the claims for relief from this Court as follows: (1) the Court's actions and rulings during trial and sentencing; (2) ineffective assistance of trial counsel; and (3) ineffective assistance of appellate counsel. Petitioner-Defendant, in his supplemental claims, alleges claims related to: (1) the admissibility of an illegal search; (2) compelling testimony of a defendant; (3) the right to assistance of counsel

during a "secret interrogation"; and (4) the ineffective assistance of trial counsel in failing to object to the admission of illegally obtained incriminating statements.

In opposing Petitioner-Defendant's motions, the Government asserts that he has failed to state claims for which he is entitled to relief because those claims are either not recognized claims or have been procedurally waived or defaulted. The Government also asserts that Petitioner-Defendant has failed to demonstrate that his experienced lawyer, who was both his trial and appellate counsel, was ineffective. For the reasons that the Court discusses below, the Court respectfully denies Petitioner-Defendant's motions.

## BACKGROUND

In August 2012, a federal grand jury returned an Indictment charging Petitioner-Defendant and his codefendants, Geshik-O'Binese Martin, Edward McCabe Robinson, George Allen Martin, Kevin John Needham, and Terin Rene Stately, with aiding and abetting Murder in the First Degree and aiding and abetting Murder in the Second Degree, all in violation of Title 18, United States Code, Sections 2, 1111, 1151, and 1153(a), and aiding and abetting Robbery in violation of Title 18, United States Code, Section 2, 1151, 1153(a), and 2111, for their respective roles in the robbery and deaths of Craig David Roy and Darla Ann Beaulieu on or about January 1, 2011. (Doc. No. 1.)

The case was tried before a jury for nine days, beginning on February 25, 2013. Significantly, Petitioner-Defendant testified on his own behalf. (Tr. 1467-1539.[1]) Petitioner-Defendant testified and claimed that he and his five codefendants went to the Roy residence so that he could retrieve his clothing and move away from Roy. (Tr. 1497-1500.) Petitioner-Defendant also testified that he, along with Geshik-O-Binese Martin, Edward Robinson, George Martin, and Kevin Needham, walked through the heavy snow to the Roy residence while Terin Stately waited in the car on the road. *Id.* Petitioner-Defendant claimed that when he, Geshik-O-Binese Martin, and Edward Robinson entered the home, Roy met them at the door and threatened them to get out. (Tr. 1502-03.) Petitioner-Defendant claimed that he and Robinson left the residence, leaving Geshik-O-Binese Martin in the house, and ran towards the car with George Martin and Kevin Needham. (Tr. 1503-04.) Geshik-O-Binese Martin was also very clear, when he testified, that his codefendants were not in the Roy residence at the time of the murders. Geshik-O-Binese Martin also testified that he, alone, stabbed the victims, Roy and Beaulieu, and did so in self defense after Roy became violent. Petitioner-Defendant testified that he did not rob or kill Roy or Neadeau on January 1, 2011. (Tr. 1514.) Importantly, it was the position of each and every defendant, including Geshik-O-Binese Martin, that no robbery occurred on January 1, 2011. As the jury

---

[1]        Citations to "Tr." refer to the trial transcript in this case.

verdict established, the jury rejected that testimony of not only Petitioner-Defendant, but his co-defendant Geshik-O-Binese Martin.

The jury returned a verdict, finding Petitioner-Defendant guilty of aiding and abetting robbery. (Doc. No. 278.[2]) The jury acquitted Petitioner-Defendant on all counts of murder. *Id.*

On September 27, 2013, this Court sentenced Petitioner-Defendant to 160 months of imprisonment for his conviction for Aiding and Abetting Robbery. (Doc. No. 345.)

On appeal, Petitioner-Defendant argued improper *ex parte* contact by the district court with the jury venire, failure to provide the jury with a lesser-included instruction on theft of government property, and error in imposing a six-level enhancement in the Sentencing Guidelines calculations for acquitted conduct. *United States v. Martin, et al.*, 777 F.3d 984, 990-92, 997-98 (8th Cir. 2015). The Eighth Circuit Court of Appeals rejected Petitioner-Defendant's arguments and affirmed the judgment of the district court. *Id.* at 998.

On April 20, 2015, the United States Supreme Court denied Petitioner-Defendant's petition for a writ of certiorari. *Martin v. United States*, 135 S. Ct. 1882 (2015).

As noted above, on February 18, 2016, Petitioner-Defendant filed a *pro se* motion to vacate his sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 448.)

---

[2] Codefendants Geshik-O-Binese Martin and Edward Robinson were convicted on all counts of murder and robbery. (Doc. Nos. 274 & 276.) Codefendant George Martin was acquitted on all counts. (Doc. Nos. 280 & 282.) Codefendants Terin Stately and Kevin Needham entered pleas of guilty prior to trial. (Doc. Nos. 148 & 248.)

Petitioner-Defendant then filed an additional *pro se* motion to add supplemental claims pursuant to 28 U.S.C. § 2255 on July 25, 2016.  (Doc. No. 474.)

## DISCUSSION

## I.   Section 2255 Legal Standard and Procedural Issues

As the Government has observed, Title 28, United States Code, Section 2255, provides that a prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence."  In making such a motion, a § 2255 action requires a prisoner to show that he has the right to be released because:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255(a).

It must be kept in mind that a § 2255 request for relief is extraordinary and "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice."  *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).  Thus, contrary to a number of Petitioner-Defendant's assertions which will be addressed below, § 2255 does not encompass all claimed errors in conviction and sentencing."  *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)).

Importantly, a § 2255 motion may not be utilized to collaterally attack issues that have been raised and decided on direct appeal. *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001); *Dall v. United States*, 957 F.2d 571, 572 (8th Cir. 1992) (per curiam). Consequently, claims that were raised and decided on direct appeal cannot be reargued in a motion pursuant to 28 U.S.C. § 2255. *See English v. United States*, 998 F.2d 609, 612 (8th Cir. 1993). Moreover, "a defendant who has procedurally defaulted a claim by failing to raise it on direct review may raise that claim in a § 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence." *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001), *citing Bousely v. United States*, 523 U.S. 614, 622 (1998). Failure to raise an issue on direct appeal, in most cases, constitutes procedural default and precludes a defendant from raising that issue for the first time in a § 2255 motion. *Dejan v. United States*, 208 F.3d 682, 685 (8th Cir. 2000).

## II. Ineffective Assistance of Counsel

The United States Constitution guarantees that the accused "shall enjoy the right . . . to have the Assistance of Counsel" in criminal prosecutions. U.S. Const. amend. VI. To prevail on a claim for ineffective assistance of counsel under § 2255, however, a defendant must overcome a "heavy burden." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). To overcome that burden, a defendant must first "show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficiency must be "so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment." *Id.* Second, the defendant must establish that the deficient performance actually prejudiced the defense. *Id.*

To establish that there was a deficient performance, the defendant must show that the errors were not the result of "reasonable professional judgment." *Id.* at 690. There is a strong presumption "that counsel . . . . rendered adequate assistance." *Id.* A defendant must prove, then, with "a probability sufficient to undermine confidence in the outcome," that "but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

## III.   Petitioner-Defendant's § 2255 Claims by Category

As the Government did, the Court will now proceed to evaluate Petitioner-Defendant's claims contained in his initial § 2255 motion filed in February 2016 and his supplemental claims filed in July 2016 as follows: (1) alleged errors made by the Court's actions and rulings during trial and sentencing; (2) ineffective assistance of trial counsel; (3) ineffective assistance of appellate counsel; and (4) supplemental claims.

**A.** **Petitioner-Defendant's claims of the Court's errors in its rulings and actions during trial and sentencing proceedings**

      **1.** **Petitioner-Defendant asserts that Rule 43(a)(2) of the Rules of Criminal Procedure and his due process rights were violated during the Court's alleged *ex parte* communication with the venire panel during jury selection**

First of all, as observed by the Government, this issue was addressed on appeal to the Eighth Circuit Court of Appeals. While this issue cannot be relitigated in a collateral proceeding based upon 28 U.S.C. § 2255, *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001); *see also Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011), the Court will nonetheless address the issue. The Court acknowledges that there is an exception to the "direct appeal" or "procedural default" rule if "a fundamental defect which inherently results in a complete miscarriage of justice" occurred. *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal citation omitted). This did not occur during the trial in this matter. There was no miscarriage of justice that occurred. Moreover, careful scrutiny of the record in this case belies the position of Petitioner-Defendant that there was any likelihood that a reasonable juror would have found Petitioner-Defendant not guilty but for his claims of error by the Court.

As the record establishes in this case, as lawyers for the Government and Petitioner-Defendant prepared to exercise their peremptory challenges, the Court sought and received permission from each of them to speak to the jury venire. After the conversation, the trial continued without any further objections to any so-called *ex parte* communication with the jury venire while the parties exercised their peremptory

challenges.  Then, during his appeal, Petitioner-Defendant, through his counsel, claimed that the Court's so-called *ex parte* communication with the jury venire violated his constitutional rights and Rule 43(a) of the Federal Rules of Criminal Procedure.  777 F.3d at 990-92.  The Eighth Circuit affirmed Petitioner-Defendant's convictions and denied Petitioner-Defendant's request to remand the matter for an evidentiary hearing and a new trial due to the Court's so-called *ex parte* communication.  *Id.* at 992.

In the Court's view, the Petitioner-Defendant now raises the same issue in this § 2255 motion.  He now claims that his appellate counsel failed to argue that he would have wanted to be present during the communication.

Petitioner-Defendant is, in effect, relitigating the so-called *ex parte* communication claim in this motion to vacate pursuant to 28 U.S.C. § 2255, notwithstanding that it was directly addressed and raised on his direct appeal.  The Eighth Circuit's lack of prejudice finding is dispositive of this issue.  *See Martin*, 777 F.3d at 992.  Petitioner-Defendant's claim is barred pursuant to the miscarriage-of-justice exception because he cannot show cause or actual prejudice.  *See United States v. Frady*, 456 U.S. 152, 165 (1982).  However, even assuming Petitioner-Defendant's claim is not prohibited by the previous appeal or otherwise procedurally defaulted, the Court still denies his request for relief because the record is devoid of any evidence that the Court's so-called *ex parte* communication with the jury venire had any impact whatsoever on the twelve jurors who ultimately decided the case.  Ironically, the jury's verdict confirms the contrary, given the

fact that the jury found Petitioner-Defendant not guilty on all counts of murder. Consequently, the Court denies Petitioner-Defendant's motion on this basis.

## 2. Relevant conduct enhancement at sentencing

At the time of sentencing, Petitioner-Defendant objected to the six-level enhancement pursuant to § 2B3.1(b)(3)(C) of the United States Sentencing Guidelines. The Eighth Circuit affirmed Petitioner-Defendant's conviction and found that the District Court properly applied this enhancement based on the trial record. *Martin*, 777 F.3d at 998.

Notwithstanding having raised this issue on direct appeal, Petitioner-Defendant raises this issue in his § 2255 motion asserting that the Court applied the wrong standard for the enhancement by focusing on isolated statements by the Court at the time of sentencing that were taken out of context, rather than a careful review of the entire record and the factual findings of this Court.

The Eighth Circuit Court of Appeals found no error, as noted above, in the Court imposing the six-level enhancement. Because no error exists and no change in law has occurred since the Court's application of the six-level enhancement, there is no cognizable claim under § 2255, even under a miscarriage of justice exception. Consequently, the Court denies Petitioner-Defendant's motion for relief on this ground.

### 3. Admission of steak knives

Petitioner-Defendant asserts that the Court abused its discretion when it admitted evidence of two steak knives located in codefendant Terin Stately's vehicle on April 15, 2011, over Petitioner-Defendant's objection. (Tr. 582-85; 805-07.) The Court would note that this issue was not raised on direct appeal, although Petitioner-Defendant now asserts ineffective assistance of counsel in not doing so, which the Court will address below.

As noted above, if the claim is not raised on direct appeal, a defendant is procedurally defaulted from raising such a claim in a § 2255 motion unless a defendant can demonstrate cause excusing his failure to raise a claim on direct appeal and actual prejudice or innocence.

Close scrutiny of the record in this matter clearly establishes that Petitioner-Defendant has failed to state a sufficient cause for failing to raise admissibility of evidence claims on direct appeal. Also, Petitioner-Defendant cannot show any prejudice from the admissibility of the evidence or factual innocence. In fact, Petitioner-Defendant is relitigating an issue that was not raised on direct appeal. Consequently, the Court denies Petitioner-Defendant's claim because it is procedurally barred.

### 4. Receipt of hearsay evidence of blood testing\

Petitioner-Defendant asserts that the Court abused its discretion when it allowed Forensic Scientist Patrick Warrick to testify regarding presumptive blood tests obtained from luminol testing on codefendant Terin Stately's car on April 15, 2011.  (Tr. 809-18.) Petitioner-Defendant's trial counsel did object to this testimony at trial (Tr. 811) and, as observed by the Government, despite overruling Petitioner-Defendant's objection, the Court did provide a cautionary instruction to the jury regarding weight of the evidence. *Id.*  On direct appeal, Petitioner-Defendant did not raise this evidentiary issue. Accordingly, Petitioner-Defendant's claim is denied by this Court because it is procedurally barred.

### 5. Admission of photos of crack cocaine and a black-handled steak knife

During the trial, the Government offered the evidence of Sergeant Harlan Johnson from the Red Lake Police Department who testified that on January 2, 2011, Petitioner-Defendant was arrested by law enforcement (Tr. 917) and that a rock of crack cocaine and a black-handled knife was taken from his person during the arrest. (Tr. 918-19.)  The Government also offered photographs of the crack cocaine seized from Petitioner-Defendant and the actual black-handled knife taken from Petitioner-Defendant. (Tr. 918-23.)  Trial counsel objected to the admissibility of the evidence at that time (Tr. 923) and Petitioner-Defendant's trial counsel vigorously cross-examined Sergeant Johnson regarding the crack cocaine and the knife.  (Tr. 927-29.)

Before this Court is Petitioner-Defendant's claim that the Court erred when it allowed the admission of the photograph of crack cocaine and the black-handled knife obtained on January 2, 2011. He further asserts that his right to confront witnesses was violated when the officer who actually seized the items from Petitioner-Defendant did not testify. (Doc. No. 449 at 6.) This issue was not addressed on direct appeal. The Court concludes that this claim is procedurally barred because Petitioner-Defendant failed to complain about this claimed trial error in his direct appeal. Moreover, Petitioner-Defendant has failed to meet the burden of proving an exception to the procedural default rule. Consequently, the Court is denying Petitioner-Defendant's motion on this ground.

### 6.    Hearsay testimony of Adrianne Beaulieu

Admittedly, Adrianne Beaulieu testified for the Government at trial. During the course of her testimony, as acknowledged by the Government, the Government attempted to elicit testimony about an incident on January 2, 2011, which involved Petitioner-Defendant and Geshik-O-Binese Martin. (Tr. 963-65.) During the testimony, it became apparent that Beaulieu had not witnessed the incident, but learned about it from codefendant Terin Stately. (Tr. 965.) Codefendant Geshik-O-Binese Martin objected to the testimony regarding the incident as hearsay and moved to strike the testimony. (*Id.*) The Court sustained the objection and then admonished the jury to disregard her testimony regarding the incident. (*Id.*) Again, Petitioner-Defendant did not challenge

this during his direct appeal.  This claim is procedurally barred.  Accordingly, the Court denies Petitioner-Defendant's motion on this ground.

### 7.    Trial testimony of Ray Brown

During the trial, Ray Brown testified regarding a conversation he had with codefendant Edward Robinson while the two were being held at the Sherburne County Jail.  (Tr. 1144.)  Brown testified that codefendant Robinson confessed to robbery and the murders of Roy and Neadeau.  (Tr. 1145-48.)  After an objection from Petitioner-Defendant's trial counsel, this Court instructed the jury that they were to consider Brown's testimony only with respect to Edward Robinson and not to any other defendants.  (Tr. 1143-44.)

Again, this evidence and its admissibility were not addressed on direct appeal. Moreover, despite the allegations of Petitioner-Defendant in his § 2255 motion, he clearly failed to show cause as to why this issue was not raised on appeal and, separate from that issue, what prejudice resulted therefrom.  Consequently, Petitioner-Defendant's motion is procedurally barred on this ground and the Court will deny relief to him on this ground.

### 8.    Testimony of Jermaine Edison

Jermaine Edison testified regarding a conversation he had with codefendant George Martin while the two were held together at the Sherburne County Jail. (Tr. 1188-89.)  Edison testified that codefendant George Martin told him why he was in custody and about his role in the robbery and murders of Roy and Neadeau. (Tr. 1190-91.)  Prior to Edison's testimony relating to this conversation with George

14

Martin, Petitioner-Defendant's counsel objected to the testimony, and the Court instructed the jury that Edison's testimony was only to be considered as it related to George Martin. (Tr. 1190.)  There is some evidentiary irony in this allegation of Petitioner-Defendant because George Martin was acquitted on all charges.

In his § 2255 motion, as observed by the Government, Petitioner-Defendant asserts that the Court erred in allowing the testimony because Edison's testimony linked Petitioner-Defendant to George Martin, despite the Court's limiting instruction.  (Doc. No. 449 at 9.)  Again, the Court must observe that Petitioner-Defendant did not challenge admissibility of this evidence during his direct appeal.  Here, Petitioner-Defendant cannot show any cause for failing to raise the issue on direct appeal and does not establish prejudice or actual innocence.  Again, the Court concludes that Petitioner-Defendant's claim is procedurally barred.  Therefore, the Court is dismissing Petitioner-Defendant's motion on this ground.

### 9.      Lacking impartiality by the Court at sentencing

In his § 2255 motion, Petitioner-Defendant, claims that this Court failed to remain open-minded in the sentencing phase of Petitioner-Defendant's case based on the Court's alleged comments at the time of sentencing and the allowance of victim impact statements from family members.  (Doc. No. 449 at 10-11.)

Importantly, as accurately observed by the Government, Petitioner-Defendant has, deliberately or inadvertently, taken specific words that the Court spoke at sentencing out of context.  Specifically, Petitioner-Defendant alleges that this Court stated that

Petitioner-Defendant "morally deserved" at least 180 months for the loss of "these dear people." (Defendant's Sentencing Transcript ["Sent. Tr."] 41-42.) As the Government notes, close scrutiny of the transcript shows that the Court was referencing and talking to the family about what the family felt. This Court then stated that it was improper for the Court to consider what is "morally deserved" and must do what the law requires and permits the Court to do. (Sent. Tr. 42.) And, as the record establishes, the Court imposed a sentence consistent with the guidelines range and there was no variance or departure. Moreover, there was no such claim raised on Petitioner-Defendant's direct appeal. For these reasons, the Court respectfully denies Petitioner-Defendant's motion on this ground.

### B.  Ineffective Assistance Allegations of Petitioner-Defendant's Trial Counsel

Petitioner-Defendant in his eleventh ground filed with his § 2255 motion claims fifteen different ways in which his trial counsel, Paul Engh, was ineffective. The record before this Court does not support the assertions of Petitioner-Defendant. In fact, the transcripts of all of the proceedings entirely belie the notion that Petitioner-Defendant received ineffective assistance of counsel. None of the claims raised by Petitioner-Defendant rises to the level of an error under the first prong of the *Strikland* test. As a result, Petitioner-Defendant has failed to meet the burden necessary to demonstrate his claim for ineffective assistance of counsel.

Even if the Court were to assume that one or more of the claims raised in Petitioner-Defendant's motion rise to the level of ineffective assistance of counsel, which

they do not, the motion would still fail because Petitioner-Defendant has not satisfied the

second prong of the *Strickland* test, which requires that the error result in actual prejudice

to Petitioner-Defendant.

Even though close scrutiny of the trial record in this case establishes that there is

no merit to any of the assertions of Petitioner-Defendant as they relate to ineffective

assistance of counsel, the Court will address them briefly, one at a time, without

conceding it is necessary for this Court to do so, based upon the record before the Court.

### 1. Trial counsel's failure to object to testimony about presumptive blood testing

At trial, as noted earlier, the Government offered the testimony of Forensic

Scientist Patrick Warwick to testify about the examination of codefendant Terin Stately's

vehicle on April 15, 2011. (Tr. 802-16.) At trial, Petitioner-Defendant's counsel objected

to the admission of the photographs of the luminol testing, but did not object on hearsay

grounds when Warrick testified that he did not conduct the presumptive test for blood

after gathering a swab from an area in the vehicle that luminesced. (Tr. 810-17.)

Petitioner-Defendant's assertion of ineffective assistance of counsel is without

merit. Patrick Warwick was clearly permitted to testify regarding the testing process,

including testifying with respect to the presumptive test results. Moreover, in addition to

defense counsel asking for a limiting instruction to the jury regarding the weight of the

evidence (Tr. 810-11), Warrick was very vigorously and effectively cross-examined by

codefendant Geshik-O-Binese Martin's counsel. Consequently, based upon close

scrutiny of the trial record in this case, Petitioner-Defendant cannot establish that his counsel's performance was deficient in any way in failing to object. Petitioner-Defendant did not receive ineffective assistance of counsel. Petitioner-Defendant's motion is denied on this ground.

      **2.**      **Trial counsel's failure to object to hearsay testimony about Officer Johnson that Petitioner-Defendant had crack on him when he was arrested on January 2, 2011**

At trial, Sergeant Harlan Johnson testified that when Petitioner-Defendant was arrested on January 2, 2011, he had crack on him. (Tr. 918.) Sergeant Johnson's testimony was based on what another officer had told him. (Tr. 918.) Petitioner-Defendant now claims that his trial counsel was ineffective because he failed to object to the hearsay testimony of Officer Johnson. In this case, Petitioner-Defendant's assertion is false, as observed by the Government, because Petitioner-Defendant's counsel did object to the hearsay testimony. (Tr. 918.) This Court overruled the objection. Moreover, on cross-examination, Petitioner-Defendant's counsel vigorously cross-examined Officer Johnson's testimony regarding the crack cocaine that was allegedly located on Petitioner-Defendant, but ultimately lost. Based on the record before this Court, Petitioner-Defendant did not receive ineffective assistance of counsel in large part because his counsel did object to the hearsay testimony. Petitioner-Defendant's motion is denied on this ground.

      **3.**      **Trial counsel's failure to object to Adrianne Beaulieu's testimony regarding crack cocaine Petitioner-Defendant was in possession of that belonged to Roy**

At trial, Adrianne Beaulieu testified that on January 1-2, 2011, in a conversation involving several individuals sitting around a table together, Petitioner-Defendant reported that Roy had gotten a quantity of crack cocaine and that Petitioner-Defendant knew where Roy kept it. (Tr. 941-42.) Now, Petitioner-Defendant asserts that his trial counsel was ineffective in failing to object to what he described as Beaulieu's "unfounded testimony."

First of all, Adrianne Beaulieu established sufficient foundation to properly testify regarding Petitioner-Defendant's statements while sitting around the table at her home. Secondly, as it turns out, counsel for codefendant Geshik-O-Binese Martin did object asserting insufficient foundation. (Tr. 943.) Consequently, any further objection by Petitioner-Defendant's counsel was unnecessary. Again, there is some irony in this evidentiary objection because Petitioner-Defendant himself provided the foundation for Beaulieu's testimony. His trial testimony confirmed that Roy had crack cocaine on or about December 29-30, 2010. (Tr. 1488.)

Based upon the record before this Court, Petitioner-Defendant did not receive ineffective assistance of counsel by failure of his counsel to object to Beaulieu's claim that Petitioner-Defendant told her that Roy was in possession of crack cocaine on or about January 1, 2011. For that reason, the Court denies Petitioner-Defendant's motion on this ground.

**4.     Petitioner-Defendant's trial counsel's failure to object when Adrianne Beaulieu testified that "they were all in the room dividing it up"**

Adrianne Beaulieu testified that the morning after Petitioner-Defendant and his five codefendants returned from the Roy's residence, "Geshik, Eddie, George, and Kevin Needham" were in a back bedroom dividing up money, a gun, and a ball of crack. (Tr. 957.) Admittedly, Beaulieu testified that Petitioner-Defendant was not present in the back room. (Tr. 958.) Petitioner-Defendant asserts that his counsel should have objected to this testimony because Beaulieu was not present at Roy's residence to know whether the money, cocaine, and gun were taken from Roy. The record clearly shows that Adrianne Beaulieu was testifying regarding her observations on the morning of January 2, 2011. Nothing more, nothing less. This evidence was admissible. Petitioner-Defendant did not receive ineffective assistance of counsel regarding this issue. For that reason, the Court denies Petitioner-Defendant's motion on this ground.

> ### 5. Petitioner-Defendant's trial counsel's failure to object when Adrianne Beaulieu testified that Petitioner-Defendant "rolled" codefendant Geshik-O-Binese Martin

At trial, as observed by the Government, Adrianne Beaulieu testified that Petitioner-Defendant "rolled" or dug in codefendant Geshik-O-Binese Martin's pants and retrieved crack. (Tr. 963.) Upon further examination, Beaulieu testified that she did not see Petitioner-Defendant "roll" his codefendant. Rather, codefendant Terin Stately told her. (Tr. 965.) At that time, codefendant Geshik-O-Binese Martin's attorney objected to and moved to strike her testimony. (*Id.*) The Court sustained the objection and advised the jury to disregard Beaulieu's testimony regarding this subject. (Tr. 965.)

Again, it was not necessary for Petitioner-Defendant's counsel to object because codefendant's counsel covered the objection and appropriately moved to strike the testimony. Based on the record before the Court, Petitioner-Defendant did not receive ineffective assistance of counsel and Petitioner-Defendant's motion on this ground is denied.

**6. Trial counsel's failure to object to contradictory testimony of Brent Matzke regarding where the alleged blood was found in the car**

At trial, the Government called Forensic Scientist Brent Matzke to testify regarding DNA analysis of presumptive blood found in codefendant Terin Stately's car on April 15, 2011. (Tr. 1075-84.) Petitioner-Defendant, in his § 2255 motion, now claims that his counsel should have objected to contradictory information regarding where the alleged blood was found in the car without indicating what the subsequent contradiction is. Moreover, close scrutiny of the record again reveals that Petitioner-Defendant's counsel zealously cross-examined Matzke in line with the defense theory that no physical evidence–including DNA evidence—linked Petitioner-Defendant to the crimes alleged. (Tr. 1084-85.)

Petitioner-Defendant did not receive ineffective assistance of counsel. Based upon the record before the Court, the Court therefore denies Petitioner-Defendant's motion on this ground.

### 7. Trial counsel's failure to object to Travis Varney's testimony pertaining to purchases of crack cocaine made by Roy and Petitioner-Defendant

During the trial, Travis Varney testified regarding his conversations with Petitioner-Defendant that occurred while both men were in custody at the Red Lake Jail in January 2011. (Tr. 1110-20.) During this testimony, Varney testified that Petitioner-Defendant made statements pertaining to Petitioner-Defendant and Roy traveling to the "cities" to get crack cocaine. Now, Petitioner-Defendant claims that his trial counsel should have objected to this testimony. Again, trial counsel for Petitioner-Defendant vigorously cross-examined Varney about his client's purported statements (Tr. 1128) as well as Varney's motivation and reputation to lie. (Tr. 1120-31.) Close scrutiny of the record establishes that Petitioner-Defendant did not receive ineffective assistance of counsel and the Court denies Petitioner-Defendant's motion on this ground.

### 8. Trial counsel's failure to object to the dismissal of a juror without consulting Petitioner-Defendant

During the trial, as observed by the Government, one of the seated jurors was dismissed by this Court after it learned of the juror having a serious family matter. In so doing, the dismissed juror was replaced with one of the alternates. (Tr. 1243-45.) All of the lawyers consented to the dismissal of the juror in the case. However, Petitioner-Defendant now alleges that this was done without his lawyer consulting him.

Petitioner-Defendant fails to show how his trial counsel's performance fell below a reasonable standard. Anything Petitioner-Defendant has now asserted is pure speculation. There was nothing ineffective about his trial counsel's agreeing with, along with the other lawyers, to the dismissal of a juror without seeking Petitioner-Defendant's permission.

Even if the Court assumes that his trial counsel's communication was deficient, Petitioner-Defendant fails to establish that there is any reasonable probability that the proceeding would have ended with a different result, notwithstanding trial counsel's failure to consult him on dismissal of this juror for a serious family matter. For this reason, the Court denies Petitioner-Defendant's motion on this ground.

> **9.** **Trial counsel's failure to inquire of jury venire regarding accomplice testimony**

Any fair and close scrutiny of the record in this case regarding jury selection belies each and every allegation of Petitioner-Defendant. There is not a scintilla of evidence in the record to establish that Petitioner-Defendant's trial counsel's performance was deficient in failing to ask specific questions during jury selection. In fact, to the contrary, with the extraordinary experience of Petitioner-Defendant's trial counsel, there was very effective voir dire accomplished by Petitioner-Defendant's counsel, as well as by the other counsel of the codefendants. The Court provided, in this case and other similarly situated cases, appropriate instructions regarding accomplice testimony. (*See* Tr. 1774-77.)

Petitioner-Defendant did not receive ineffective assistance of counsel and the Court denies Petitioner-Defendant's motion on this ground.

### 10. Trial counsel was ineffective because he failed to request a jury instruction to scrutinize accomplice testimony with caution

Petitioner-Defendant claims that his trial counsel's performance was deficient because he failed to request a specific accomplice testimony jury instruction.

First of all, the Court, with or without a request, would have given the same instruction that it provided regarding accomplice testimony. There was no additional accomplice instruction warranted, based upon the record before this Court. Again, close scrutiny of the record before the Court clearly shows that Petitioner-Defendant's trial counsel's performance was not objectively unreasonable regarding his failure to request additional and specific accomplice testimony jury instructions. There was no ineffective assistance of counsel and the Court denies Petitioner-Defendant's motion on this ground.

### 11. Trial counsel was ineffective because he failed to rebut the Government's Rule 29 argument pertaining to evidence

Petitioner-Defendant asserts that there was no evidence that existed that he received any proceeds from the robbery. The record again belies the position of Petitioner-Defendant where he alleges that his lawyer was deficient for failing to rebut an argument made by the Government during the Rule 29 motion before this Court. And, as observed by the Government, Petitioner-Defendant's counsel effectively addressed this issue in his closing argument.

Petitioner-Defendant's trial counsel was not ineffective or deficient on this issue. Moreover, Petitioner-Defendant cannot show that there would have been any different result but for his trial counsel's performance during the case on this issue. Also, consistent with all criminal trials, the jury did not hear the argument of counsel on the Rule 29 motion. The Rule 29 arguments were only before the Court. His trial counsel was able to provide a lengthy and very effective closing summation to the jury. There was no prejudice to Petitioner-Defendant because of anything his trial lawyer did or did not do. Therefore, the Court denies Petitioner-Defendant's motion for ineffective assistance of counsel on this ground.

### 12. Trial counsel's failure to rebut the Government's assertions during cross-examination of Petitioner-Defendant

Admittedly, Petitioner-Defendant did testify at trial. (Tr. 1467-1539.) And, during cross-examination, the Government did ask a series of questions pertaining to Petitioner-Defendant's alleged statements to Travis Varney about how a fire is the best way to get rid of evidence. Now, Petitioner-Defendant asserts that his trial counsel should have asked follow-up questions to contradict and rebut this line of questioning. Again, Petitioner-Defendant has clearly failed to show how his trial counsel's conduct fell below an objective standard. In fact, his trial counsel was entirely consistent with Petitioner-Defendant's theory of the case, namely, that he was only going to get his clothes and that Roy threatened him when he entered Roy's home. Petitioner-Defendant's counsel at no time endorsed the Government's theory of the case.

Petitioner-Defendant's lawyer made a strategic decision not to contradict or rebut the Government's line of cross-examination.

Finally, on this issue, Petitioner-Defendant cannot show that there is any reasonable probability that the trial would have ended with a different result or verdict without this asserted counsel's alleged error, which was not an error, based upon the record before the Court. Petitioner-Defendant's trial counsel, in fact, was successful in obtaining a not guilty verdict on the most serious charges in the case, namely, the murder counts, despite the evidence in the case and the Government's line of cross-examination. For these reasons, the Court denies Petitioner-Defendant's motion for ineffective assistance of counsel on this ground.

### 13. Trial counsel's failure to rebut the Government's sentencing argument

Petitioner-Defendant asserts that his trial lawyer failed to rebut the Government's assertions and arguments made during the sentencing in this proceeding relating to the § 3553(a) factors. Again, the record not only belies the assertions of Petitioner-Defendant, but, as it turns out, Petitioner-Defendant's trial counsel successfully persuaded this Court to impose a sentence, over the objection of the Government, that was 20 months less than the Government requested. Again, any close and fair scrutiny of the trial transcript and the sentencing transcript clearly shows that at all times Petitioner-Defendant's trial counsel zealously and very effectively represented him, consistent with his extensive experience and reputation. There was no deficiency in trial

counsel's performance.  Moreover, and as stated repeatedly above, there is no reasonable

probability that the trial would have ended up any differently, even assuming these errors

occurred, which the Court has rejected, either during the trial, in front of the jury, or in

front of this Court at sentencing.  For these reasons, the Court denies

Petitioner-Defendant's motion on this ground.

### 14. Trial counsel's failure to present evidence of circumstances existing at the time of his arrest

Petitioner-Defendant asserts that his trial counsel was ineffective in failing to

present evidence that he had no money at the time of his arrest to rebut the claim that he

received proceeds from the robbery.  Petitioner-Defendant fails to show how his trial

counsel's performance was deficient on this issue in any way.  The Court again states that

any fair and close scrutiny of the record belies these assertions of Petitioner-Defendant.

Moreover, again, Petitioner-Defendant has failed to show that there is any reasonable

probability that the trial would have ended up with a different result but for the conduct of

his trial counsel.  To the contrary, Petitioner-Defendant was acquitted of the four murder

charges in the case.  Petitioner-Defendant did not receive ineffective assistance of counsel

on this ground and the Court denies Petitioner-Defendant's motion on this ground.

### 15. Trial counsel was ineffective because he failed to move for a downward adjustment based on Petitioner-Defendant's role in the offense

Petitioner-Defendant asserts that his trial counsel was ineffective because he failed

to argue to this Court that he was entitled to a downward adjustment based upon his role

in the offense.  The Court must candidly state in this matter that any such argument would

have been without merit, but, in light of the good faith argument by trial counsel for a

downward adjustment of 20 months, which the Court granted, the Court then and now

would deny any such claim of a reduced role based upon the law that applies to such

situations and the record before this Court.  And, as observed by the Government, and

consistent with the record before this Court, each and every codefendant that was

convicted and sentenced for aiding and abetting the robbery did not receive any role

adjustments.  Close scrutiny of the record clearly establishes that there are no facts that

would support a role reduction in this case and none was received by any defendant.

There was no prejudice to Petitioner-Defendant by his trial counsel's failure to seek an

additional role adjustment.  For this reason, the Court denies Petitioner-Defendant's

motion on this ground.

### C.    Ineffective assistance of appellate counsel

#### 1.    Petitioner-Defendant's appellate counsel failed to argue that Petitioner-Defendant would have "gained" anything by attending the *ex parte* meeting before the Court and jury

As noted above, the Eighth Circuit has already determined on the direct appeal of

Petitioner-Defendant's case that Petitioner-Defendant did not show that he would have

"gained anything by attending" the so-called *ex parte* meeting.  *United States v. Martin,

et al.*, 777 F.3d 984, 992 (8th Cir. 2015).  The Eighth Circuit's decision negates any claim

of ineffective assistance of counsel with respect to any asserted missed argument on this

issue.  The Court therefore denies Petitioner-Defendant's motion on this ground.

## 2. Appellate counsel's failure to argue that the District Court's findings were insufficient to support a six-level enhancement

Petitioner-Defendant claims, again, that his appellate counsel failed to adequately argue this issue that was presented on direct appeal. Again, the appellate court's decision entirely belies Petitioner-Defendant's assertion of ineffective assistance of counsel. The Eighth Circuit held that the record supported the District Court's findings with respect to the application of the six-level enhancement. 777 F.3d at 998. Petitioner-Defendant cannot show that his appellate counsel's performance was deficient or that prejudice resulted from any claimed error by his counsel. Petitioner-Defendant did not receive ineffective assistance of counsel by his appellate lawyer on this issue. The Court denies Petitioner-Defendant's motion on this ground.

## 3. Appellate counsel's failure to raise a sufficiency of the evidence claim

Petitioner-Defendant asserts that since the jury acquitted codefendant George Martin of all charges, that the evidence against Petitioner-Defendant must be insufficient to support his conviction for robbery. Hence, another claim by Petitioner-Defendant that his appellate counsel was ineffective in failing to raise sufficiency of the evidence on appeal.

First of all, a reviewing court will view the evidence in the light most favorable to the jury's verdict and give it the full benefit of all reasonable inferences. *United States v. Johnson*, 474 F.3d 1044, 1048 (8th Cir. 2007). Moreover, a reviewing court does not weigh the evidence or access the credibility of witnesses. *Id.* Consequently, based on the

record before this Court, there is no likelihood that Petitioner-Defendant would have been successful on this claim. There is nothing in the record before this Court to support any assertion by Petitioner-Defendant that his appellate counsel was deficient, and therefore ineffective, in failing to raise a sufficiency of evidence claim on direct appeal. There is no reasonable probability that the result would have changed or been altered in any way. There was no prejudice to Petitioner-Defendant on this issue because of his appellate counsel's appeal strategy. The Court denies Petitioner-Defendant's motion on this ground.

4.      **Appellate counsel's failure to raise and challenge admissibility of evidence submitted at trial**

Petitioner-Defendant asserts that his appellate counsel was ineffective because he did not raise claims related to the admissibility of the steak knives and presumptive blood found in codefendant Terin Stately's vehicle on April 15, 2011; admissibility of the evidence concerning "jail house snitches"; evidence of a black-handled knife and pictures of cocaine allegedly found on Petitioner-Defendant on January 2, 2011; and testimony that Petitioner-Defendant committed a theft ("rolled") or dug in codefendant Geshik-O-Binese Martin's pants and took crack cocaine.

First of all, this Court's instructions to the jury stated that testimony from Ray Brown and Jermaine Edison ("jail house snitches") was admissible only as to the codefendant involved in the jail house conversation. Petitioner-Defendant did not have a conversation with either Ray Brown or Jermaine Edison. The evidence was not

admissible as to Petitioner-Defendant.  Finally, this Court struck testimony relating to a claim by Adrianne Beaulieu that Petitioner-Defendant committed a theft.  The Court instructed the jury to disregard that testimony.

Any fair and careful review of the trial record in this matter relating to the evidentiary rulings in this case clearly shows that Petitioner-Defendant's appellate counsel was not deficient or otherwise ineffective in failing to raise these evidentiary challenges on direct appeal.  Moreover, Petitioner-Defendant cannot show that he was prejudiced by counsel's failure to do so, or that there was any probability that the result would have been different in any way.  The Court denies Petitioner-Defendant's motion on this ground.

5.      **Appellate counsel failed to raise the claim the District Court was not impartial at sentencing**

Petitioner-Defendant asserts that this Court showed bias favoring the families of the deceased at sentencing.  In so doing, Petitioner-Defendant asserts that his appellate counsel should have raised this claim of lack of impartiality on appeal.  As the Court noted above, and as accurately observed by the Government, in so alleging bias and lack of impartiality, the Petitioner-Defendant has taken statements out of context and quoted the Court from the transcript inaccurately.  As earlier noted by the Court, what it did state was that it could not support the victims' families' claims, despite their request for 180 months.  The Court acknowledged its oath to follow the law.  Then, when this Court pronounced its sentence, it deviated from the families' and the Government's

recommendations of at least 180 months, and imposed a sentence of 160 months. Appellate counsel made a decision to appeal the issues that it felt had the most merit and that would be the most successful. The Court would suggest that, on this claim, the trial record speaks for itself and belies the assertions of Petitioner-Defendant. The Court denies Petitioner-Defendant's motion on this ground.

### D.    Petitioner-Defendant's supplemental claims filed four-months after his initial § 2255 motion

As correctly observed by the Government, Petitioner-Defendant's final four supplemental claims are all inextricably connected to his earlier § 2255 motion. The record belies the supplemental claims of Petitioner-Defendant to the extent they allege ineffective assistance of counsel and prejudice to Petitioner-Defendant. Consequently, based on the record before the Court, Petitioner-Defendant did not receive ineffective assistance of counsel and, he has not demonstrated any viable cause for his procedural default. And, as with the other claims, Petitioner-Defendant has clearly failed to provide any evidence establishing prejudice or actual innocence. For these reasons, the Court denies Petitioner-Defendant's requested relief relating to the supplemental claims.

## IV.    Evidentiary Hearing

Based on the record before the Court, there is no reason for the Court to further explore any credibility issues with respect to Petitioner-Defendant's claims. A § 2255 motion can be dismissed without a hearing when: (1) defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true

because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998). Applying that standard to the Petitioner-Defendant's allegations and the record before the Court, the Court concludes that no evidentiary hearing is required in this case.

## V.      Certificate of Appealability

An appeal cannot be taken from a final order denying a motion under § 2255 without a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B)(2006); Fed. R. App. P. 22(b)(1). A court cannot grant a COA unless the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).

The Court has considered whether the issuance of a COA is appropriate. *See Tiedeman v. Benson*, 122 F.3d 518 (8th Cir. 1997). In that context, the Court concludes that no issue raised is "debatable among reasonable jurists." *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994) (citing *Lozado v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam)). The Petitioner-Defendant has not, therefore, made the "substantial showing of the denial of a constitutional right" necessary for the issuance of a COA. 28 U.S.C. § 2253(c)(2).

## CONCLUSION

The record before this Court entirely forecloses any notion that Petitioner-Defendant received ineffective assistance of counsel under *Strikland* either at the trial level or appellate level. In fact, not only was there not any actual prejudice to Petitioner-Defendant, but based on the record before this Court, the Court cannot envision any evidence that it could have received or excluded that would have changed the verdict

or the sentencing. Admittedly, the Court will observe, and the Government has admitted, that its delay in responding to Petitioner-Defendant's habeas petition was "inexcusable." Then, because of that inexcusable delay, as they have acknowledged, the Government did not challenge the timeliness of any of the supplemental claims of the Petitioner-Defendant. Importantly, the Court has not taken lightly the delay of the Government and has acknowledged that delay and accepted responsibility. On the record before this Court, and the sentence that this Court imposed, the Court continues to conclude there was no prejudice to Petitioner-Defendant other than waiting for a ruling from this Court. The issue would be different and more complex if there had been what is commonly referred to as a *Johnson* issue, referring to *Johnson v. United States*, 135 S. Ct. 2551 (2015), where the Supreme Court held that the residual clause of the Armed Career Criminal Act was unconstitutionally vague. However, there was and is no such claim before this Court and it played no role in the Court's sentence of 160 months.

Based upon the presentations and the submissions of the parties, the Court having carefully reviewed the entire record in this matter, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

**ORDER**

1.     Petitioner-Defendant David John Martin's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. No. [448]) is respectfully **DENIED**.

2.      Petitioner-Defendant David John Martin's *pro se* supplemental claims to his

motion to vacate, set aside, or correct his sentence (Doc. No. [474]) is respectfully

**DENIED**.

3.      Petitioner-Defendant David John Martin's Motion for Default Judgment

(Doc. No. [465]) is **DENIED AS MOOT**.

4.      No evidentiary hearing is required in this matter.

5.      No Certificate of Appealability will be issued to Petitioner-Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  June 16, 2017          s/Donovan W. Frank
                               DONOVAN W. FRANK
                               United States District Judge